**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TEAMSTERS LOCAL UNION 430,<br><br>Plaintiff,<br><br>v.<br><br>NORTH ATLANTIC TRANSPORT COMPANY OF RHODE ISLAND,<br><br>Defendant. | ) | C.A. No. 05-006 L |

**NOTICE OF RULE 30(b)(6) DEPOSITION**

TO: Bernard A. Jackvony, Esq.
Richard J. Welch, Esq.
Moses Afonso Jackvony, Ltd.
170 Westminster Street, Suite 201
Providence, RI 02903

Allied Court Reporting
115 Phenix Ave.
Cranston, RI 02910

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6) Plaintiff will take the deposition before a notary public, or some other officer authorized by law to take depositions, of North Atlantic Transport Company of Rhode Island, Inc. ("NATCO"), a party in this case. NATCO is required to designate one or more officers, directors, agents, or other persons with the most knowledge to testify on its behalf regarding the issues and topics set forth in the attached Schedule A. The deposition or depositions will commence on August 3, 2006 at 10:00 a.m. at the offices of Little Medeiros Kinder Bulman & Whitney, P.C., 72 Pine Street, 5th Floor, Providence, RI 02903, or on a lawfully adjourned date, and shall continue from

day to day until concluded. The testimony shall be recorded by stenographic means. You are invited to attend and take such part as is appropriate under law.

TEAMSTERS LOCAL UNION NO. 430,

By Its Attorneys,

Christopher H. Little (#1789)
Scott K. Pomeroy (#6044)
LITTLE MEDEIROS KINDER BULMAN &
WHITNEY, P.C.
72 Pine Street
Providence, RI 02903

(401) 272-8080
Fax (401) 521-3555

Dated: 17 July 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of July 2006, I served the within Notice of Rule 30(b)(6) Deposition by hand delivery to each of the following:

Bernard A. Jackvony, Esq.
Richard J. Welch, Esq.
Moses Afonso Jackvony, Ltd.
170 Westminster Street, Suite 201
Providence, RI 02903

Wendy R Novak

scott/A114/1451

**Schedule A**
**Subjects For Examination**

For the period January 1, 1999, to the present:

1. The nature and extent of any interrelation or integration between the operations of NATCO and those of North Atlantic Distribution, Inc. ("NORAD").

2. Details regarding the nature and extent of NATCO's various business lines and the relationship between those lines and the business lines of NORAD, Vehicle Services Group of Rhode Island, Inc. ("VSG"), and MidAtlantic Processing, Inc. ("MAP").

3. Details regarding the nature of NATCO's operations at each location where it does or has done any part of its business including without limitation details regarding what equipment or facilities were used at each location and what employees were employed at each location.

4. Details regarding the nature of services NATCO performs for each of its customers and what facilities, locations, and employees it used to perform such work.

5. Details regarding any use of NATCO's business equipment, assets, facilities, employees, or other business resources to perform any work for or in conjunction with NORAD, VSG, or MAP.

6. Details regarding any shared business operations between NATCO, NORAD, VSG, or MAP including but not limited to processing of payroll, tracking inventory, communications with customers, billing, accounting, purchasing, leasing of trucks or other equipment, customer relations, credit, financing, and other business tasks.

7. Details regarding all business of any kind that NATCO transacted with NORAD, VSG, or MAP.

8. All statements or representations to customers, employees, the public, any regulatory authority, or any other persons regarding the existence or nature of the relationship between NATCO, NORAD, VSG, or MAP.

9. Details regarding any transfer of managers, supervisors, or other employees between NATCO, NORAD, VSG, or MAP.

10. Any and all training for NATCO employees and details regarding whether such training was shared or available to employees of NORAD, VSG, or MAP.

11. Details regarding all credit or financial transactions between NATCO, NORAD, VSG, or MAP, including but not limited to any inter-company borrowing, any transfers of cash, the sharing of any business or non-business expenses between or among the companies, and the nature and substantiation of all so-called "management fees" exchanged between the companies.

12. Details regarding which employees are or were responsible for NATCO's internal bookkeeping and accounting and the extent of their involvement in bookkeeping or accounting tasks for NORAD, VSG, or MAP.

13. Details regarding any joint insurance policies or sharing or allocation of insurance premiums or coverage between or among NATCO, NORAD, VSG, or MAP.

14. Details regarding any joint loans or sharing or allocation of bank accounts, loan payments, or loan proceeds between or among NATCO, NORAD, VSG, or MAP.

15. All details regarding any shared or common management between NATCO and NORAD.

16. The identities and business roles of all officers, directors, managers, supervisors, and employees of NATCO, including but not limited to details regarding chain of command and the scope of each manager's or supervisor's authority and area(s) of responsibility.

17. Details regarding internal NATCO decision-making and communications regarding the management and supervision of all employees and of all business operations including but not limited to production, sales, marketing, accounting, and other operations.

18. All details regarding any shared or centralized control over labor or employee matters at NATCO and NORAD.

19. Details regarding NATCO's policies and decisions regarding interviewing, hiring, promotions, employee discipline, drug testing, vacations, layoffs, terminations and other employee or personnel matters.

20. Details regarding NATCO's policies and decisions regarding wages, hours, benefits, working conditions, safety, and other labor matters.

21. Details regarding NATCO's policies and decisions regarding union matters.

22. Details regarding the nature and extent of common ownership of NATCO and NORAD.

23. Details regarding any portion or aspect of NATCO's business (including but not limited to NATCO's operations, contracts, leases, loans, employees, assets, equipment, inventory, customers, and suppliers) that was transferred to or undertaken by NORAD before, after, or near the time that NATCO ceased operations.

24. All reasons why NATCO ceased operations and all events and circumstances regarding its decision to cease operations.

25. Details regarding any transfer of NATCO funds or assets to Michael Miranda or members of his family and any use of NATCO funds or assets for the personal benefit of Michael Miranda or his family.

26. Details regarding any transfer or commingling of funds or assets by or between NATCO, NORAD, VSG, or MAP and any use of the funds or assets of any one of these companies for the benefit of one of the others.

27. Details regarding NATCO's director and shareholder meetings, resolutions, and adherence and/or non-adherence to any corporate formalities.