UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC. and MICHAEL MIRANDA, Plaintiffs, | ) | |
| v. | ) | C.A. No. 05-348L |
| TEAMSTERS LOCAL UNION NO. 430; TEAMSTERS LOCAL UNION NO. 776; DANIEL A. VIRTUE, in his capacity as President of Teamsters Local Union No. 776; and JOHN L. FOGLE, in his Capacity as Secretary of Teamsters Local Union No. 776, Defendants. | ) | |

DECISION AND ORDER

Ronald R. Lagueux, Senior United States District Judge.

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiffs North Atlantic Distribution, Inc. ("NORAD") and Michael Miranda (collectively, "Plaintiffs") and Defendants Teamsters Local Union No. 430, Teamsters Local Union No. 776, Daniel A. Virtue in his capacity as President of Teamsters Local Union No. 776, and John L. Fogle in his capacity as Secretary of Teamsters Local Union No. 776 (collectively, "Defendants"). For the reasons set forth below, the Court grants Plaintiffs' Motion for Summary Judgment and denies that of Defendants.

**Background**

Michael Miranda is the president and sole shareholder of two Rhode Island corporations, North Atlantic Distribution, Inc. ("NORAD") and North Atlantic Transport Company of Rhode Island ("NATCO"). NORAD is engaged in the business of preparing imported foreign automobiles for delivery to American automotive dealerships, and NATCO was engaged in the business of transporting domestic and foreign automobiles to American dealerships. NATCO and Defendants were parties to a collective bargaining agreement (the "Agreement") for the period beginning June 1, 1999 through May 31, 2003. Article 15 of the Agreement provides:

> SEPARATION OF EMPLOYMENT
> (a) Upon discharge or upon permanent terminal closing, the Employer shall pay all wages, including vacation pay, in no more than seventy-two (72) hours, excluding Saturdays, Sundays and holidays, due to the employee at the time of discharge or permanent terminal closing. Failure to pay within seventy-two (72) hours of discharge shall subject the Employer to pay liquidated damages in the amount of eight (8) hours pay for each day of delay.

NATCO largely ceased its operations in York, Pennsylvania on October 26, 2001 and in Rhode Island a few months later due to lack of business. On November 9, 2001, Defendants filed a grievance against NATCO in Pennsylvania requesting that its members be paid for earned wages, vacation time, sick time, personal days and liquidated damages pursuant to Article 15 of

the Agreement. On May 22, 2002, Defendants submitted the grievance to an arbitration panel. Defendants' claims were upheld by default due to NATCO's failure to appear at the arbitration. The arbitration panel's decision did not specify the dollar amount of damages to be paid by NATCO.

On August 21, 2002, Defendants filed an action against NATCO in the United States District Court for the Middle District of Pennsylvania (C.A. No. 02-1461) (the "Pennsylvania Action") to enforce the decision of the arbitration panel. Miranda was not served individually with process but learned about the complaint from NATCO's Chief Financial Officer, Aldo Caputo, and counsel for NATCO at the time. On February 24, 2003, Defendants filed a request for default judgment in the Pennsylvania Action due to NATCO's failure to respond to Defendants' complaint seeking $27,513.28 for vacation time, unused sick days, personal days and down time owed to ten of its members, and $441,446.40 for liquidated damages plus costs and attorney's fees. Four days later, on February 28, 2003, Defendants secured a judgment in the Pennsylvania Action against NATCO in the amount of $516,815.59 (calculating liquidated damages up to February 14, 2003) plus the amount of $1,529.28 per day for liquidated damages "until the claim is paid pursuant to Article 15 of the National Master Automobile Transporters Agreement." (Pls.' Mem. Supp. Mot. Summ. J. Ex. H.) On January 7, 2005, the judgment entered in the

Pennsylvania Action was registered in the United States District Court for the District of Rhode Island.

On June 9, 2005, Defendants advised Plaintiffs that they were seeking to enforce the default judgment in the Pennsylvania Action against NORAD and possibly Miranda based upon the "single employer" doctrine. Defendants also indicated that, as of June 9, 2005, the judgment had grown to in excess of $1,810,586.30. NORAD thereafter tendered checks to Defendants amounting to $42,931.25 to satisfy all monies that it believed constituted Defendants' underlying claims, excluding liquidated damages, in order to stop any further accrual of the liquidated damages while maintaining a denial of any liability.

On August 16, 2005, Plaintiffs filed a Complaint for Declaratory Judgment seeking, *inter alia*, a declaration that NORAD and Miranda cannot be held responsible to satisfy, in whole or in part, the judgment entered against NATCO in the Pennsylvania Action. On September 30, 2005, Defendants filed an Answer asserting three counterclaims against Plaintiffs. In essence, these counterclaims sought a declaration that NORAD and Miranda are liable to the same extent as NATCO pursuant to the federal labor law doctrines of "single employer" and "alter ego," and the Rhode Island corporate law doctrine of "alter ego." Plaintiffs filed a Motion for Summary Judgment on February 10, 2006, and Defendants filed their Objection on March 28, 2006.

Defendants then filed their own Motion for Summary Judgment on September 7, 2006, and a subsequent Objection was filed by Plaintiffs on November 10, 2006. The Court heard two sets of oral arguments, the last being on December 15, 2006, and then took the matter under advisement.

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes are genuine when, based on the evidence presented, a reasonable trier of fact could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To secure summary judgment, the moving party must show that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In response, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988)(citations omitted).

Cross-motions for summary judgment on undisputed facts require a court to determine whether either of the parties

deserves judgment as a matter of law. Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004)(citing Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004)). In this case, the facts material to resolution of the claims are undisputed and summary judgment therefore is appropriate.

## Analysis

Plaintiffs seek a declaration that Miranda and NORAD are not obligated to satisfy the judgment entered against NATCO in the Pennsylvania Action. In response, Defendants argue that the corporate entities NORAD and NATCO and their sole shareholder Miranda comprise one entity, and that therefore, NORAD and Miranda are just as liable for the Pennsylvania judgment as NATCO. The theories Defendants marshal in support of this argument are the "single employer" doctrine under Section 2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2), and "alter ego" doctrines under both the NLRA and Rhode Island corporate law. Plaintiffs contend that before these issues may even be contemplated, principles of fairness and due process protect NORAD and Miranda from being held liable on the judgment entered against NATCO.

### I. Res Judicata and Due Process

Plaintiffs argue that to extend NATCO's liability to them would violate their right to due process under the Fifth Amendment of the United States Constitution. Plaintiffs contend

that they have not had a full and fair opportunity to defend on the merits of Defendants' claims in the underlying action and that a finding of "alter ego" or "single employer" status now cannot itself bind them to the original default judgment. Because NATCO opted not to defend against the original claim and accepted the default judgment based on the relief sought in that claim, Plaintiffs posit, the mere finding of a close relationship between NATCO and NORAD or NATCO and Miranda cannot extend that judgment to them. For their part, Defendants counter that it would be unfair to respect NATCO's separate corporate identity and protect NORAD and Miranda from obligations that they knew about and had sufficient assets to pay.

Initially, the concern about relitigating claims already adjudicated appears to be appropriate for analysis under the doctrine of res judicata.[1] Plaintiffs assert that the principles of res judicata do not apply in this case, however, because "a default judgment cannot serve to preclude the litigation of issues under the doctrine of collateral estoppel." (Pls.' Mem. Supp. Mot. Summ. J. 53 n.30.) Indeed, because the doctrine of collateral estoppel, or issue preclusion, requires that the

---

[1]Some courts use the term "res judicata" to refer only to claim preclusion; this Court follows the First Circuit in using it as an umbrella term to refer to the doctrine that encompasses both claim preclusion and issue preclusion. See, e.g., Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205-06 (1st Cir. 2005).

underlying issues be "actually litigated," default judgments are not appropriate for issue preclusion purposes. Dawe v. Capital One Bank, 456 F. Supp. 2d 236, 241 (D. Mass. 2006).

Nevertheless, default judgments may be used to bar the reconsideration of claims under the doctrine of claim preclusion, which bars parties or their privies from relitigating previously adjudicated actions. Lundborg v. Phoenix Leasing, Inc., 91 F.3d 265, 270 (1st Cir. 1996)("[A] default judgment has the same claim-preclusive effect as a judgment on the merits."). Where a non-party has been found to be in privity with a party in previous litigation, it is precluded to the same extent as the party to the original litigation. Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 757 (1st Cir. 1994).

Plaintiffs argue that due process considerations, nonetheless, trump preclusion principles, and that, therefore, the Court must first analyze the due process implications of holding a non-party liable on a judgment in a previous litigation, particularly when that judgment is obtained by default. In support of this argument, Plaintiffs quote the United States Supreme Court:

> [t]he opportunity to be heard is an essential requisite of due process of law in judicial proceedings. And as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard, so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor

in privity with a party therein.

Richards v. Jefferson County, 517 U.S. 793, 797 (1996)(citations omitted). This passage does not position due process ahead of res judicata in priority, as Plaintiffs contend, but rather reiterates the well-established rule that only parties or their privies may be held to the results of a previous litigation. It is unnecessary to assert the primacy of either due process or res judicata principles because this Court is satisfied that due process concerns are integrated into the res judicata framework, and the two concepts work hand in hand to balance concerns of fairness and finality. See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 39 (1st Cir. 1998). This Court will, therefore, consider Plaintiffs' due process arguments within the res judicata context and beyond.

A. Res Judicata and Privity

Courts have indeed found that a too-liberal use of preclusion principles to bind non-parties to a judgment entered in previous litigation raises due process concerns. Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 757 n.4 (1st Cir. 1994)("The perils of nonparty preclusion [include] . . . the prospect that an overly expansive arrangement of the concept, or too free use of it, may endanger constitutional rights."). Nevertheless, as the First Circuit recognized in Gonzalez, requiring privity for non-party preclusion in large part accomplishes the due process

goal of allowing every party to have its day in court by ensuring that only those to whom the legal attributes of party status can be appropriately imputed are implicated. Id. at 757-58.

As a rule, privity "exists (and, therefore, nonparty preclusion potentially obtains) if a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his *de facto* representative." Id. at 758. Control of litigation has been defined as the "power to determine what evidence and arguments should be offered in the litigation . . . ." General Foods v. Mass. Dep't of Pub. Health, 648 F.2d 784, 789 (1st Cir. 1981). The Gonzalez court defined control simply as "the power -- whether exercised or not -- to call the shots." 27 F.3d at 758. The Gonzalez court went on to list the following factual scenarios as examples of substantial control: a liability insurer that assumes the insured's defense, an indemnitor who participates in defending an action against the indemnitee, and the owner of a close corporation who assumes control of litigation brought against the firm. Id. at 759 (listing cases). The court urged caution, however, because "there is no bright-line test for gauging substantial control[,]" and "an inquiring court must consider the totality of the circumstances to determine whether they justify a reasonable inference of a nonparty's potential or actual involvement as a

decisionmaker in the earlier litigation." Id. at 759.

Defining virtual representation is similarly difficult: according to the First Circuit, "[t]here is no black-letter rule." Id. at 761. Rather, a party's status as the virtual representative of a non-party must be determined on a case-by-case basis. Id. (citing United States v. Bonilla Romero, 836 F.2d 39, 43 (1st Cir. 1987)). The first step of such a fact-intensive analysis is to determine whether the interests of the party and non-party are sufficiently aligned so that the party may be said to be the non-party's virtual representative. Gonzalez, 27 F.3d at 760 (citing Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir. 1975)). The First Circuit has insisted that identity of interests is a necessary but not a necessarily determinative condition for a finding of virtual representation. Gonzalez, 27 F.3d at 760.

The second step of the virtual representation analysis, given identity of interests, delimits that "virtual representation will not serve to bar a nonparty's claim unless the nonparty has had actual or constructive notice of the earlier litigation, and the balance of the relevant equities tips in favor of preclusion." Id. at 761. These equities, the First Circuit specified, were found to exist in cases where the court found actual or implied consent to be bound by the results in a prior action, an express or implied legal relationship in which

parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues (such as creditors who were found to be represented by a bankruptcy trustee who had a fiduciary relationship to them), familial relationships to link the party and non-party, or evidence of tactical maneuvering designed unfairly to exploit technical non-party status in order to obtain multiple opportunities to litigate the same claim. Id. (listing cases).

Applying these principles to this case, any argument that Miranda or NORAD controlled the Pennsylvania Action against NATCO collapses in light of the fact that there was no participation by them in the Pennsylvania Action. Courts finding control by a non-party require that more than a complaint and a default judgment constitute the previous litigation. See, e.g., Kreager v. General Elec. Co., 497 F.2d 468, 472 (2d Cir. 1974)(finding non-party sole shareholder controlled litigation against party corporation where shareholder "was present in court throughout the trial, attended conferences in chambers and was the corporation's principal witness."); NEC Elecs. Inc. v. Hurt, 256 Cal. Rptr. 441, 445 (Cal. Ct. App. 1989)(holding that sole shareholder may not be held to default judgment against corporation, despite finding that shareholder depleted corporate assets and was "alter ego" of corporation, because he did not control the litigation in which corporation did not defend

lawsuit and allowed default judgment to be entered against it). In this case, NATCO did not appear at the initial arbitration hearing, which resulted in a default, and then failed to answer the complaint filed in the Pennsylvania Action, which resulted in a default judgment being entered against it. The absence of any contest for Miranda to control signals that the result of the Pennsylvania Action cannot be extended beyond the narrow claim it resolved.

The same lack of participation excludes NORAD from a finding of substantial control. Sometimes a parent corporation will be held liable on a judgment against its subsidiary primarily because of the alignment of interests between the two corporations. See, e.g., Pan Am. Match Inc. v. Sears, Roebuck & Co., 454 F.2d 871, 874 (1st Cir. 1972). In this case, however, there can be no finding of a parent/subsidiary relationship between NORAD and NATCO. Therefore, because NORAD could not have controlled the Pennsylvania Action and was not in privity purely on the basis of a parent/subsidiary relationship to NATCO, NORAD cannot be held liable on the judgment against NATCO.

As for virtual representation, the first question of the analysis concerns identity of interests between Miranda and NATCO, and between NORAD and NATCO. Neither NORAD nor Miranda were named in the Pennsylvania Action, and neither was notified that Defendants would seek payment from them for the judgment

entered against NATCO until June 2005, more than two years after the default judgment was entered in the Pennsylvania Action. Therefore, Plaintiffs' litigation interests were divergent from those of NATCO. Because NATCO had substantially ceased operations at the time of the filing of the Pennsylvania Action, but NORAD continued to function as a business, and Miranda continued to run NORAD and other businesses, the financial interests of NATCO differed significantly from those of Miranda and NORAD as well. This Court, therefore, cannot find an alignment of interests that would support a finding of virtual representation in this case. Because identity of interests is a necessary component of any finding of virtual representation, Gonzalez, 27 F.3d at 760, it is unnecessary to analyze the other indicators of virtual representation in this case. The conclusion is inescapable that Miranda and NORAD were not virtually represented in the Pennsylvania Action by NATCO.

With neither substantial control nor virtual representation as the bases for privity available here, this Court concludes that there is no privity between NATCO and the non-parties NORAD and Miranda. For these reasons, claim preclusion cannot be used to apply the default judgment in the Pennsylvania Action to either NORAD or Miranda.

B. Due Process and Fairness

Another approach to balancing due process and res judicata

concerns of finality and fairness can be found in the Restatement (Second) of Judgments, which states the general rule that "a judgment in an action to which a corporation is a party has no preclusive effect on a person who is an officer, director, stockholder, or member of a non-stock corporation . . . ." Restatement (Second) of Judgments § 59 (1982). It qualifies this rule, however, by further stating that

> [a] judgment against a corporation that is found to be the alter ego of a stockholder or member of the corporation establishes personal liability of the latter only if he is given notice that such liability is sought to be imposed and fair opportunity to defend the action resulting in the judgment.

Id. at § 59(5). Therefore, a finding of alter ego status makes personal liability of a shareholder possible, but is not by itself sufficient; a showing that notice and fair opportunity to defend were provided to that stockholder is also required.[2] Defendants claim that this Restatement section expands the res judicata effect of a judgment against a corporation "so that any adjudication of alter ego status made in the action *also binds* the non-party alter egos *so long as* the alter egos had notice." (Defs.' Mem. Opp'n Pls.' Mot. Summ. J. 14.) Cases applying section 59 reveal that this interpretation is erroneous; rather

---

[2]The Restatement discusses only the possibility of holding individual shareholders or owners of a corporation liable for judgments against the corporation, but the same principles should apply to a controlling corporation.

than extend the range of the res judicata doctrine, section 59 emphasizes the importance of notice and participation by the non-party that res judicata similarly requires. See, e.g., Bates Marketing Assocs. v. Lloyd's Elecs., Inc., 464 A.2d 1142, 1145-46 (N.J. Super. Ct. App. Div. 1983); Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd., 768 P.2d 117, 122-23 (Alaska 1989).

As part of the concept of opportunity to litigate in the context of an alter ego relationship, the Restatement reporters assert that timely, individual notice must be provided to the owners that they are potentially answerable for the corporation's liability:

> [i]f at the outset of the litigation the opposing party has manifested an intention to bind individually the persons associated with the corporation, and effects service of process addressed to those persons individually, adequate opportunity is afforded them to defend against the asserted liability. On the other hand, if the claim of individual liability is made at some later stage in the action, the judgment can be made individually binding on a person associated with the corporation only if the individual to be charged, personally or through a representative, had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.

Restatement (Second) of Judgments § 59 cmt. g. As an illustration of this principle, the reporters offer two factual scenarios:

> 6. P brings an action for breach of contract against C, a corporation, serving process on

> S, the corporation's secretary. S subscribes to a responsive pleading on behalf of the corporation but thereafter <u>fails to participate in defense of the action.</u> Judgment is entered for P, who thereupon names S individually as a party to the action and seeks to have judgment entered against S on the ground that the form of corporate activity was not observed and that the corporation was S's alter ego. Judgment may not be entered against S without permitting him to contest the existence and extent of liability to P under the contract.
>
> 7. Same facts as Illustration 6 except that S <u>actively participates in a vigorous defense of the action</u> against C. P thereafter names S as an individual defendant and by appropriate procedure seeks judgment against him on the ground that the corporation was S's alter ego. If P can establish nonobservance of the corporate form warranting the conclusion that the corporation was S's alter ego, and S cannot give good reason why he should be permitted to relitigate the issues, judgment should be entered against S.

<u>Id.</u> at § 59 cmt. g, illus. 6, 7 (emphasis added). These illustrations reveal that active participation in a vigorous defense to an action against an owner's alter ego corporation is necessary before he may be held accountable for a judgment against that corporation, even if early notice of individual liability is given.

In addition, the Restatement allows that even where there is no alter ego finding, a judgment against a closely-held corporation may be applied to an owner:

> (3) If the corporation is closely held, in that one or a few persons hold substantially

> the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:
>
> > (a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue . . . .

Id. at § 59(3)(a)(emphasis added). In the context of closely-held corporations, then, the key ingredients are active participation in the litigation and common interests with the corporation, and then only those issues determined in the case against the corporation may be applied against an owner.

In the case at bar, there is evidence both of the closely-held nature of NATCO and of a potential finding of alter ego status with Michael Miranda. Therefore, it is necessary to examine the facts for both sets of indicia: (1) in the alter ego context, whether Miranda had notice and opportunity to defend, that is, whether he was served individually with notice of process in the Pennsylvania suit or had control of the litigation and occasion to conduct it diligently; or (2) in the closely-held context, whether Miranda actively participated in the defense and had interests sufficiently in common with the corporation that he

should not be allowed to relitigate the claim.

As discussed above, NATCO was the only named party in the Pennsylvania Action. Miranda was not served individually with process but learned about the complaint from others. NATCO did not appear or defend the action and a default judgment was entered against it.

For purposes of extending a judgment to a non-party alter ego, it is clear Miranda was neither given notice of the Pennsylvania Action, nor did he have an opportunity to defend against it. He was not served with process individually, nor did he have reason to expect he might be pursued to satisfy any judgment against NATCO. Because NATCO opted to default, there was no litigation for Miranda to participate in, much less control.

This logic applies to the closely-held context as well: without a litigation in progress, there is nothing for an owner of a closely-held corporation to control. As for the identity of interests between the corporation and the owner, as discussed above, Miranda's interests as a non-party diverged substantially from those of NATCO.

This Court's conclusion that Miranda did not receive the required notice of the lawsuit against NATCO is supported by case law. Cases interpreting Restatement § 59 illustrate that the shareholder's mere knowledge of the lawsuit does not constitute

notice. See, e.g., NEC Elecs. Inc. v. Hurt, 256 Cal. Rptr. 441, 446 (Cal. Ct. App. 1989). In NEC Electronics, the California Appeals Court found that while there was sufficient evidence to show that the shareholder was the alter ego of the corporation (indeed, the court found that he had depleted the assets of the corporation by $2.8 million for personal expenses), it would not allow the judgment entered in default against the corporation to be amended to name the shareholder as a judgment creditor. That court's concern was that the shareholder's interests were not aligned with those of the corporation because the corporation was about to declare bankruptcy: "Hurt was not named as a party, had no risk of personal liability and therefore was not required to intervene." NEC Electronics, 256 Cal. Rptr. at 445. Also, the court concluded,

> there is no evidence to show that Hurt controlled the defense of the litigation. There was no defense for Hurt to control. After [the corporation] filed its general denial, no further proceedings were conducted. . . . Most importantly, [the corporation] did not appear at trial. . . . Moreover, it is not enough that Hurt was 'aware' of the action between NEC and [the corporation]. Surely every chief executive officer of a corporation is cognizant of claims asserted against the corporation.

Id. at 445-46. That the executive was an alter ego of the corporation and was aware of the suit against the corporation, thus, did not justify extending a default judgment to him.

Indeed, while the Restatement does not address directly the

significance of the original judgment resulting from a default rather than a trial, that fact is outcome-determinative for courts considering the issue. In Motores De Mexicali v. Superior Court, 331 P.2d 1, 3 (Cal. 1958), for example, the California Supreme Court held that a defendant's alter ego cannot be added to a default judgment by postjudgment motion. The plaintiff in Motores secured a default judgment against Erbel, Inc., which shortly thereafter declared bankruptcy and became unable to satisfy the judgment. Id. at 2. The plaintiff subsequently learned that Erbel, Inc. was under the complete control and management of three individuals, and he then claimed that because the corporation was an alter ego of these individuals, the three should be held individually liable for the default judgment. Id. The plaintiff contended that the individuals used the corporation as "a means for diverting the revenues of the business to themselves as salaries and loan repayments while at the same time avoiding any personal liability for the obligations of the business[,]" all the while knowing that "their financial manipulations would ultimately lead the corporation into bankruptcy." Id.

The court in Motores, however, refused to extend liability to the three individuals as they "in no way participated in the defense of the basic action" against Erbel, and because they "did not have attorneys subsidized by them appearing and defending the

action" against the company. Id. at 3. Because no claim had been made against the three individuals in the action brought against Erbel, and none of them had been served in their individual capacities, the court found that they had no duty to defend themselves in that action. Id. To have extended liability without allowing the three to litigate anything beyond their relation to the named corporation, according to the court, would have constituted a denial of the due process guaranteed by the Fourteenth Amendment. Id.

Similarly, in Katzir's Floor and Home Design, Inc. v. M-MLS.COM, 394 F.3d 1143, 1150 (9th Cir. 2004), the Ninth Circuit determined that the defendant corporation's sole owner could not be added to a default judgment based upon "alter ego" liability. In Katzir's, a default judgment had previously been entered against the defendant corporation, which, after initially defending against the lawsuit, ceased its defense due to financial difficulties. Id. at 1146-47. The district court subsequently modified the default judgment by adding the defendant corporation's sole owner, who was determined to be the defendant's alter ego, as a judgment debtor. Id. at 1147. The circuit court in Katzir's concluded that the district court erred in amending the default judgment because the owner was not named individually in the original action and had no duty to defend. Id. at 1150. The court further opined that to add the owner to

the judgment without allowing him to litigate the underlying claim "would patently violate due process." Id. (citing Motores, 331 P.2d at 3).

Defendants point to the fact that in Motores and Katzir's there was an attempt to amend the judgments to add individuals who were not parties to the original action as judgment debtors, and that is not the relief they seek in their countersuit. Moreover, Defendants add, they do not rely on the res judicata effect of the Pennsylvania Action, and therefore, the above reasoning should not apply. Instead, it appears from Defendants' counterclaims that they seek to "enforce the judgment" in the Pennsylvania Action pursuant to the NLRA "single employer" doctrine, the NLRA "alter ego" doctrine and the Rhode Island corporate law "alter ego" doctrine. The counterclaims request a declaration from the Court that pursuant to these doctrines, NORAD and Miranda are liable to pay the Pennsylvania Action judgment against NATCO. While procedurally, these counterclaims for a declarative judgment differ from an action to amend a judgment, they are in essence efforts to apply liability as determined in one suit to entities who were not parties to the original litigation. Res judicata concerns about finality and relitigation of determined issues certainly arise, as do the due process concerns raised by the Motores and Katzir's courts.

In this case, the requirements of due process make it

impossible for this Court to extend a default judgment to a non-party, regardless of the non-party's relationship to the original party. There is no need, therefore, for the Court to determine whether NATCO was an alter ego of Miranda or NORAD, or whether the "single employer" doctrine binds the entities and the individual shareholder. In short, the due process clause is the determinative factor in this case. Plaintiffs cannot be made liable to pay the default judgment entered against NATCO. To make Plaintiffs liable to pay that judgment would result in a violation of basic principles of due process of law.

II. Enforceability of the Pennsylvania Judgment

Plaintiffs also challenge the validity of the default judgment entered in the Pennsylvania Action on the grounds that it awards an unenforceable penalty and is so vague and ambiguous as to be void and unenforceable. Defendants counter that Plaintiffs have failed to demonstrate the elements necessary for a Rule 60(b) challenge to a foreign judgment.[3] Because the Plaintiffs in this case were not parties to the Pennsylvania Action, nor are they in privity with a party to that action, a Rule 60(b) motion is not available to them. Instead, Plaintiffs have initiated a separate action to test the enforceability of

[3]Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party or its legal representative from a final judgment for enumerated reasons, including mistake, inadvertence, excusable neglect, newly discovered evidence and fraud. Fed. R. Civ. P. 60(b).

the Pennsylvania judgment as to them. The limitations of Rule 60(b) are therefore not applicable in this instance.

Under the federal registration statute, a registered judgment "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963. Defendants registered the judgment in the Pennsylvania Action in the District of Rhode Island in January 2005; that judgment therefore is subject to the same statutory limitations as constrain the enforcement of any judgment in this district.

The judgment in the Pennsylvania Action adopted language proposed in the union's request for default judgment and ordered NATCO to pay the amount of $516,815.59, which represented the accumulation of $1,529.28 per day added to the initial claim of $27,513.28 as of the date of February 14, 2003. Also imported from the request into the judgment was a requirement that the $1,529.28 would continue to accumulate "for liquidated damages until the claim is paid[.]" (Pls.' Mem. Supp. Mot. Summ. J. Ex. H.) The sum sought by Defendants in the counterclaims in this action represents the accumulation of those liquidated damages by order of the Pennsylvania court as of June 2005, a sum which now totals over $2,000,000.

A plaintiff who obtains a money judgment is entitled to post-judgment interest at a rate corresponding to the current

Treasury Bill rate. 28 U.S.C. § 1961. Without statutory authority to award a different kind of post-judgment accrual, a court's power to award a money judgment is limited to damages in a sum certain and pre- and post-judgment interest. DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp., 14 F.3d 1163, 1167 (7th Cir. 1994)("Not only is there no statutory authority for [awarding liquidated damages]; there is no room for an exercise of inherent judicial power. The ground is occupied by statutes and rules already."). Defendants have pointed to no statutory authority that would legitimize the accumulation of liquidated damages from a $27,000 damages award to a sum exceeding $2,000,000. Because there is no statutory basis for the judgment entered in the Pennsylvania Action, it cannot be enforced in this district, even against NATCO.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment of Plaintiffs North Atlantic Distribution, Inc. and Michael Miranda requesting a declaratory judgment is granted. Accordingly, Defendants' Motion for Summary Judgment on the counterclaims is denied. The Clerk will enter judgment on the Complaint to the effect that the Court declares the judgment in the Pennsylvania Action to be unenforceable against NORAD and Miranda. Also, judgment shall be entered for Plaintiffs on Defendants' counterclaims.

It is so ordered.

Ronald R. Lagueux
Senior United States District Judge
July 24, 2007